IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| TZVI STRAUSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 326-017 |
| | ) | |
| TRACY PAGE, Warden; HALEY | ) | |
| CHESTER, Chief Counselor; STEPHANIE | ) | |
| CALHOUN, Deputy Warden; and | ) | |
| MONTGOMERY STATE PRISON, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, incarcerated at Montgomery State Prison in Mt. Vernon, Georgia, is proceeding *pro se* in this case filed pursuant to 42 U.S.C. § 1983.  The Court **REPORTS** and **RECOMMENDS** the motion for judgment on the pleadings by Defendants Page, Chester, and Calhoun be **GRANTED**.  (Doc. no. 3.)  In exercise of its statutory power to screen *pro se* complaints, the Court also **REPORTS** and **RECOMMENDS** Defendant Montgomery State Prison, and all claims against it, be **DISMISSED**.  See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1277-78 (11th Cir. 2001) (*per curiam*); 28 U.S.C. § 1915A.  Lastly, the Court **REPORTS** and **RECOMMENDS** this civil action be **DISMISSED**, and an appropriate judgment of dismissal be **ENTERED**.

I.    **BACKGROUND**

   A.    **Factual Background**

In his complaint, Plaintiff names as Defendants: (1) Warden Tracy Page; (2) Chief Counselor Haley Chester; (3) Deputy Warden Stephany Calhoun and (4) Montgomery State

Prison. (Doc. no. 1-1, pp. 4, 7.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Upon arriving at Montgomery State Prison, Plaintiff put in a request with a counselor[1] for kosher food and a Jewish prayer book. (Id. at 8.) The counselor directed Plaintiff to speak with Defendant Deputy Warden Calhoun and Defendant Warden Page. (Id.) When Defendants Calhoun and Page came to Plaintiff's cell for an inspection, Plaintiff asked them if he could receive kosher food and a Jewish prayer book. (Id.) They denied his requests and stated, "they don't have to." (Id.)

After Plaintiff made his requests for kosher food and a Jewish prayer book, Daniela Hunt began making Jewish jokes and mocking Plaintiff's religion. (Id.) Approximately two weeks later, Defendant Page placed Plaintiff in segregation "under pending investigation" for no stated reason. (Id.) While in segregation Plaintiff has been denied attorney visitation, as well as access to a telephone to call his attorney. (Id.)

For relief, Plaintiff requests: (1) that he be allowed to have kosher food and a Jewish prayer book; (2) that he be moved out of segregation; and (3) that Daniela Hunt have no further contact with him. (Id. at 9.)

### B.    Plaintiff's Relevant Grievance History

In support of their motion for judgment on the pleadings, Defendants Page, Chester, and Calhoun produced the declaration of Haley Chester, Grievance Coordinator at Montgomery State Prison. (See doc. no. 3-2, pp. 2-6 ("Chester Decl.").) As Grievance Coordinator, Ms. Chester is familiar with the Georgia Department of Corrections ("GDC")

---

[1] Plaintiff never identifies this counselor by name in his statement of claim. (See doc. no. 1-1, p. 8.) It is thus unclear whether the "counselor" described in Plaintiff's statement of claim is named Defendant Chief Counselor Chester. (See id. at 7.)

2

grievance process, and her responsibilities include ensuring compliance with the applicable grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶ 2.)

Ms. Cheser identified one grievance Plaintiff filed while incarcerated at Johnson State Prison and four grievances he filed while incarcerated at Montgomery State Prison. (Id. ¶¶ 13-18.)  Grievance Number 386693, submitted at Johnson State Prison on August 27, 2025, concerned a complaint about a nurse at this facility. (Id. ¶ 16; doc. no. 3-2, pp. 57-60.)  The grievance was resolved after an investigation, and Plaintiff did not appeal. (Chester Decl., ¶ 16; doc. no. 3-2, pp. 57-60.)  At Montgomery State Prison on October 30, 2025, Plaintiff filed Grievance Number 388456, which concerned his catheter. (Chester Decl., ¶ 15; doc. no. 3-2, pp. 52-56.)  Grievance Number 388456 was denied after an investigation, and Plaintiff did not appeal. (Chester Decl., ¶ 15; doc. no. 3-2, pp. 52-56.)  In Grievance Number 391387, submitted by Plaintiff on January 21, 2026, at Montgomery State Prison, Plaintiff complained about his allergies and that he cannot eat peanut butter, fish, or shellfish. (Chester Decl., ¶ 14; doc. no. 3-2, pp. 44-51.)  This grievance was denied on February 20, 2026, and Plaintiff submitted an appeal that is pending as of April 22, 2026. (Chester Decl., ¶ 14; doc. no. 3-2, pp. 44-51.)  Finally, Plaintiff submitted two grievances – Grievance Number 394535 and Grievance Number 394797 – on April 9 and April 16, 2026, respectively, concerning Officer Hunt's refusal to allow Plaintiff to go to the chapel at Montgomery State Prison. (Chester Decl., ¶¶ 17-18; doc. no. 3-2, pp. 66-71.)  Grievance Number 394535 was denied and is still pending for Plaintiff to be notified of the denial, and Grievance Number 394797 is currently pending investigation. (Chester Decl., ¶¶ 17-18; doc. no. 3-2, pp. 66-71.)

In one of Plaintiff's responses to the motion for judgment on the pleadings, Plaintiff attached a purported grievance dated October 7, 2025, relating to his request for kosher food and a Jewish prayer book. (Doc. no. 8, p. 5.) Plaintiff alleges Defendant Chester refused to accept this grievance. (Id. at 1.) The Court addresses this grievance in Section II.C below and concludes it is not credible.

### C.      Procedural History

Plaintiff filed his complaint, dated February 4, 2026, *pro se* in the Superior Court of Montgomery County on February 17, 2026. (Doc. no. 1-1.) On February 20, 2026, a deputy served Defendant Page with process. (Id. at 20-21.) Plaintiff thereafter filed a "motion for records" and a motion to amend, both dated February 20, 2026, in the Montgomery County Superior Court. (Id. at 25-28.) In his motion to amend, Plaintiff sought leave to amend his complaint to add claims about a "medical provider" at Montgomery State Prison who allegedly refused to approve certain urological and neurological treatment ordered by another doctor. (Id. at 27.)

On March 23, 2026, Defendant Page, and Defendants Chester and Calhoun appearing specially,[2] filed an answer and removed the case to federal court. (Id. at 31-37; see also doc. no. 1.) The following day, the Clerk of Court issued a removal notice to all parties, which informed the parties they must re-file any pending motions previously filed in state court within fourteen days, and that the Court "will not *sua sponte* take up motions filed prior to removal date." (Doc. no. 2.) Plaintiff did not re-file his motion for records or his motion to amend by this deadline. On April 22, 2026, Defendants Page, Chester, and Calhoun filed a

---

[2] Defendants Chester and Calhoun contend they were not served. (Doc. no. 1-1, p. 31 n.1; doc. no. 1, p. 2.) Indeed, there is nothing in the state court documents provided supporting that either Defendant has been served. (See generally doc. no. 1-1.) However, neither Defendant moves for dismissal on this basis. (See doc. no. 3.)

motion for judgment on the pleadings, alleging Plaintiff failed to exhaust his administrative remedies. (Doc. no. 3.) They also moved to stay discovery pending resolution of their motion for judgment on the pleadings, (doc. no. 5), and the Court granted this request, (doc. no. 6).

## II.  MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS PAGE, CHESTER, AND CALHOUN

Defendants Page, Chester, and Calhoun ("moving Defendants") move for judgment on the pleadings because Plaintiff failed to exhaust his administrative remedies. (Doc. no. 3.) Plaintiff responded in opposition.[3] (Doc. nos. 7, 8.)

### A.  Legal Framework Concerning Exhaustion

As a motion for judgment on the pleadings under 12(c) and a motion to dismiss under 12(b)(6) are almost identical in form and relief, courts apply the same legal standard in assessing both motions. See Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc., 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016) ("The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6).") (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).

Where, as here, a defendant argues the plaintiff failed to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside,

---

[3] Plaintiff filed a response opposing the moving Defendants' motion, (doc. no. 7), and thereafter filed a response to the Court's April 23, 2026 Order providing Plaintiff with information and instructions about the motion for judgment on the pleadings, (doc. no. 8). Attached to Plaintiff's second response is a purported affidavit, grievance form, and witness statement. (Id. at 4-6.) Because Plaintiff is proceeding *pro se*, the Court considers both responses.

541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion for judgment on the pleadings should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case."  McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

6

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016). Here, Plaintiff makes no allegations or arguments under the second scenario outlined in Ross. The Court addresses Plaintiff's allegations concerning the first and third Ross scenarios in Section II.C below.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotations omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules

governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159. The Eleventh Circuit has repeatedly ruled a prisoner plaintiff must *properly* use all available administrative steps available in order to satisfy the PLRA's exhaustion requirement. Varner v. Shepard, 11 F.4th 1252, 1260-61 (11th Cir. 2021) (collecting cases).

### B.    The Administrative Grievance Process

As a part of the Chester Declaration, the moving Defendants provided a copy and explanation of the applicable Statewide Grievance Procedure, Policy Number ("PN") 227.02, which became effective on May 10, 2019. (Chester Decl., ¶¶ 3-11; doc no. 3-2, pp. 7-40.) The grievance procedure has two steps: (1) Original Grievance; and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance." Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal. Id.

§§ IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2).  The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause.  Id. § IV(C)(2)(b).  The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal.  Id. § IV(C)(2)(e).  If the Central Office Appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance.  Id. § IV(C)(2)(g).  The prisoner has seven calendar days from receipt of the Warden's second response to file a second Central Office Appeal.  (Id.)

### C.      Plaintiff's Failure to Exhaust

In his complaint signed on February 4, 2026, Plaintiff alleges the moving Defendants refused to provide him with kosher food and a Jewish prayer book, another prison official made insensitive jokes towards him and his religion, and he was thereafter placed in segregation for no reason.  (Doc. no. 1-1, p. 8.)  In his complaint and first response opposing the motion for judgment on the pleadings, Plaintiff acknowledges there is a grievance procedure at Montgomery State Prison and that he filed a formal grievance prior to filing this lawsuit.  (Id. at 6; see also doc. no. 7, p. 1.)  Plaintiff alleges he did not receive a response to his grievance.  (Doc. no. 1-1, p. 6.)  He further contends he wrote letters to the Defendant Page and spoke to her personally while he was in segregation in January 2026.  (Id. at 6, 7.)  In his second response opposing the moving Defendants' motion, Plaintiff avers for the first time that he "attempted to file a grievance but the defendant refused too [sic] accept the grievance from the Plaintiff."  (Doc. no. 8, p. 1.)  Under step one of Turner, the Court takes Plaintiff's

version of the facts as true, notwithstanding their inconsistencies, concludes dismissal is not appropriate, and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and the moving Defendants have the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Off., 23 F.4th 1299, 1307 (11th Cir. 2022). As explained below, the Court concludes the moving Defendants carried the burden to show Plaintiff did not properly exhaust his administrative remedies.

The moving Defendants have shown through the Chester Declaration that Plaintiff did not submit any grievance concerning the issues in the instant lawsuit. (Chester Decl. ¶¶ 12-18.) Ms. Chester identified five grievances Plaintiff filed in while in Georgia Department of Corrections custody: one grievance at Johnson State Prison and four grievances at Montgomery State Prison. (Id. ¶¶ 13-18.) None of the grievances Ms. Chester located relate to the allegations raised in Plaintiff's complaint. (See Chester Decl. & doc. no. 3-2; see also doc. no. 1-1.)

When faced with the Chester Declaration signed under penalty of perjury, Plaintiff filed two responses: one dated April 27, 2026, titled "Response too [sic] Defendant Motion on [J]udgment," (doc. no. 7), and another dated May 4, 2026, titled "Response too [sic] Court Order," (doc. no. 8). In the unsworn, unattested April 27th response, Plaintiff alleges without citing any proof that he filed a grievance and wrote letters to Defendant Page about the issues raised in his complaint. (See doc. no. 7.) Plaintiff contends he can call witnesses and show video footage establishing that he filed a grievance, but he provides no evidentiary support for these claims. (Id. at 1.) He also insinuates without proof that the grievance coordinator may

have destroyed the grievance and letters because she is a named Defendant. (Id.)  In the May 4th response, Plaintiff states he attempted to file a grievance but "the defendant" refused to accept it. (Doc. no. 8, p. 1.)  He attached the affidavit of Thomas Dobbs, another inmate, who apparently observed the "Chief Counselor" refuse to accept the grievance. (Id. at 4 ("Dobbs Aff.").)  Plaintiff also appended a grievance dated October 7, 2025, discussing his request for kosher food and a prayer book, and a purported sworn witness statement from Brittany Brock who alleges she saw Plaintiff attempt to hand Defendant Chester his grievance, and that she observed Defendant Page refuse to talk to Plaintiff. (Id. at 6-7.)

As explained below, Plaintiff's responses are wholly unpersuasive and not credible in the face of Ms. Chester's sworn declaration and supporting attachments.  First, the April 27th response by itself is unconvincing because it is unsworn.  Further, Plaintiff's responses offer blatantly contradicting accounts of his efforts to exhaust administrative remedies.  In the April 27th response, as well as in his complaint, Plaintiff claims he filed a formal grievance and wrote letters to the warden. (Doc. no. 7, p. 1; see also doc. no. 1-1, p. 6.)  He also suggests, without any proof whatsoever, that Defendant Chester may have destroyed the grievance he filed. (Doc. no. 7, p. 1.)  Yet, in the May 4th response, Plaintiff alleges for the first time that he tried to file a grievance, but Defendant Chester refused to accept it and Defendant Page would not talk to him about the issues in his grievance. (Doc. no. 8.)  These two explanations directly conflict with one another:  it is impossible for Plaintiff to have both successfully filed a formal grievance and for Defendant Chester to have refused to accept his grievance. Nowhere does Plaintiff attempt to reconcile these inconsistencies.

Moreover, the Court has carefully analyzed the Dobbs Affidavit, October 7th grievance, and Brittany Brock's sworn statement attached to Plaintiff's May 4th response and

11

concludes they have been fabricated by Plaintiff. A thorough review of Plaintiff's handwriting in his complaint, (doc. no. 1-1), state court motions, (id. at 25-28), and responses to the motion for judgment on the pleadings, (doc. nos. 7, 8), reveals the Dobbs Affidavit and Brittany Brock's sworn statement each bear Plaintiff's handwriting, (doc. no. 8, pp. 4, 6). Most tellingly, however, is that the Dobbs Affidavit and Brittany Brock's witness statement both contain the exact same grammatical error Plaintiff commits repeatedly throughout his filings: his incorrect use of "too" instead of "to." (Compare doc. no. 1-1, p. 25 ("Plaintiff needs these records too [sic] prove wrong . . . ."); id. at 27 ("Comes[] now the Plaintiff . . . and request[s] [permission] too [sic] amend . . . ."); doc. no. 7, p. 2 ("W[h]erefore ask this honorable court too [sic] set a hearing . . . ."); doc. no. 8, p. 1 ("Plaintiff disputes that and shows the following for the court too [sic] consider[.]"), with Dobbs Aff. ("Offender Tzvi Strauss attempted too [sic] hand the Chief Counselor a grievance . . . .) and doc. no. 8, p. 6 ("Offender Tzvi Strauss [] attempted too [sic] hand Ms. Chester a grievance and Ms. Chester refused [too] take it. He then tried too [sic] talk too [sic] the Warden but the Warden refused too [sic] talk too [sic] him."). It is highly unlikely that three separate individuals would each make the same distinct grammar mistake in their writing. Accordingly, the Court discredits the statements contained in the Dobbs Affidavit and Brittany Brock witness statement because it is clear Plaintiff, not Mr. Dobbs or Ms. Brock, wrote them.

Further, the October 7th grievance about Plaintiff's request for kosher food and a Jewish prayerbook, raised for the first time in Plaintiff's second response opposing the motion for judgment on the pleadings, is suspicious at best. (Doc. no. 8, p. 5.) Plaintiff belatedly submitted this response after receiving the Court's April 23, 2026 Order informing him his response "should include appropriate supporting affidavits or other documentary evidence he

may have to contest any exhaustion issue . . . ." (Doc. no. 4, p. 3.) Plaintiff's first response did not contain any such affidavits or evidence. (See doc. no. 7.) Based on the timing of Plaintiff's later response and the new claims he presents therein, it is apparent he created the October 7th grievance after initiating this lawsuit and receiving the Court's April 23rd Order in a Hail Mary attempt to justify his failure to exhaust.

In sum, the Court concludes Plaintiff manufactured the exhibits attached to his May 4th response and thus rejects Plaintiff's contentions that he attempted to file a grievance but was precluded by Defendant Chester. The Court further declines to rely on Plaintiff's unsworn, conclusory claims in his April 27th response stating he filed a grievance, which Defendant Chester may have later destroyed. Instead, the Court fully credits the Chester Declaration and finds the moving Defendants have met their burden to show Plaintiff did not exhaust his administrative remedies prior to filing his complaint.

Indeed, the Court's review of all five grievances confirms they do not discuss the claims alleged in Plaintiff's complaint. First, Plaintiff filed Grievance Number 386693 at Johnson State Prison. (Chester Decl., ¶ 15; doc. no. 3-2, pp. 58-60.) However, Plaintiff moved to Montgomery State Prison, where the alleged events underlying this lawsuit occurred, *after* being housed at Johnson State Prison. (Doc. no. 3-2, pp. 51-52.) Thus, this grievance cannot concern the issues alleged in Plaintiff's complaint. Grievances Number 394535 and Number 394797 relating to Officer Hunt refusing to allow Plaintiff to go to the chapel were filed in April 2026, which is after Plaintiff executed his complaint. (Chester Decl., ¶¶ 17-18; doc. no. 3-2, pp. 66-71.) Although they tangentially relate to religion, they have nothing to do with Plaintiff's claims in the instant lawsuit concerning kosher food, a prayer book, insensitive jokes, or his move to segregation.

13

Next, Grievance Number 388456 entirely centers around Plaintiff's catheter, and therefore it does not relate to the claims alleged in the above-captioned case. (Chester Decl., ¶ 15; doc. no. 3-2, pp. 52-58.) Even assuming *arguendo* the issues described in Grievance Number 388456 are the same as those discussed in Plaintiff's motion to amend, (see doc. no. 1-1, pp. 27-28), Plaintiff did not re-file this motion after the case was removed to federal court as required by the removal notice, (see doc. no. 2). Accordingly, these claims are not part of the instant litigation, and Grievance Number 388456 thus does not relate to the claims raised in Plaintiff's complaint. Finally, in Grievance Number 391387, Plaintiff complains about his food allergies and contends he cannot eat peanut butter, fish, or shellfish. (Chester Decl., ¶ 14; doc. no. 3-2, pp. 44-51.) Despite describing purported issues with the food he receives, Grievance Number 391387 never mentions Plaintiff's denied request for a kosher diet. (See doc. no. 3-2, pp. 44-51.) Nor does Plaintiff raise any concerns relating to the Jewish prayerbook, Officer Hunt's insensitive jokes about his religion, or being unjustifiably placed in segregation. (See id.) Accordingly, Grievance Number 391387 plainly does not concern the allegations raised in Plaintiff's complaint.[4]

Therefore, because the substance of Plaintiff's five grievances shows Plaintiff never grieved the issues raised in his complaint, i.e., the denied request for a kosher diet and Jewish prayerbook, Officer Hunt's inappropriate jokes, and his move to segregation, they cannot be used a basis for his exhaustion of administrative remedies. And, as explained above, the Court

---

[4] Even if Grievance Number 388456 concerning Plaintiff's catheter and Grievance Number 391387 about Plaintiff's food allergies related to the events alleged in Plaintiff's complaint, Plaintiff nonetheless failed to exhaust his administrative remedies because he failed to follow all procedural steps before filing the instant lawsuit. Specifically, Plaintiff did not appeal the grievance about his catheter, and the appeal about his food allergies was pending as of the time Ms. Chester executed her sworn declaration. (Chester Decl., ¶¶ 14, 15.) Accordingly, Plaintiff also failed to complete the administrative process before filing his lawsuit, and thus he failed to properly exhaust his claims for this reason as well. See Woodford, 548 U.S. at 90.

rejects Plaintiff's contentions that he (1) filed a formal grievance, and (2) was prevented from filing a grievance because Defendant Chester refused to accept it.  Therefore, because Plaintiff did not file any grievances about the claims raised in the instant lawsuit, his claims are unexhausted.  (Chester Decl., ¶¶ 12-19.)

Accordingly, in light of the evidence of record, the Court concludes Plaintiff did not exhaust administrative remedies because the exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules.  See Johnson, 418 F.3d at 1158-59 (emphasizing Congressional intent to allow prison officials first opportunity to address grievance issues and refusing to allow untimely grievance to satisfy exhaustion requirement where prisoner "did not request leave to file an untimely administrative grievance and did not assert good cause for his failure to file a timely grievance before he filed his federal complaint").

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds.  We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95.  Similarly, here, Plaintiff should not be allowed to bypass the administrative process by failing to grieve the allegations raised in his complaint.

Moreover, as discussed above, although Plaintiff claims prison officials refused to follow established grievance policy by failing to respond to his grievance and possibly destroying his grievance, such arguments fail.  The Chester Declaration and supporting exhibits make clear Plaintiff has only filed the five grievances discussed above while in custody with the Georgia Department of Corrections.  (See Chester Decl., ¶¶ 13-17; see also doc. no. 3-2, pp. 41-71.)  Plaintiff's unsworn, self-serving arguments in his April 27th response that he filed a grievance related to the claims in the instant lawsuit are unconvincing.  (See doc. no. 7.)  He further provides no proof that Defendant Chester destroyed his grievance.  (See id.)  Additionally, to the extent Plaintiff argues Defendant Chester prevented him from filing a grievance due to "machination, misrepresentation or intimidation," this argument also lacks merit because the evidence Plaintiff relies on to support this claim – the suspect Dobbs Affidavit and Brock statement – is unconvincing.

In sum, the Court finds the moving Defendants have met their burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit because Plaintiff did not file a grievance about any of the claims in his lawsuit.  Because Plaintiff did not properly exhaust his administrative remedies prior to initiating this case, the motion for judgment on the pleadings should be granted.  See Bryant, 530 F.3d at 1379; Johnson, 418 F.3d at 1158-59; see also Leal, 254 F.3d at 1279 ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

## III.   SCREENING THE COMPLAINT FOR THE REMAINING DEFENDANT

Notwithstanding any filing fee paid upon removal, Plaintiff's complaint must be screened to protect potential defendants.  28 U.S.C. § 1915A(b); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

### A.   Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked

assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B.      Plaintiff Fails to State a Claim Against Defendant Montgomery State Prison

Montgomery State Prison is not an entity capable of being sued. See Parks v. Georgia, No. CV 517-047, 2017 WL 2930832, at *3 (S.D. Ga. July 10, 2017) (explaining "penal institutions are entities which are not capable of being sued, as they are buildings"); see also Brannon v. Thomas Cnty. Jail, 280 F. App'x. 930, 934 n.1 (11th Cir. 2008) (*per curiam*) (noting "Thomas County Jail is not entity capable of being sued under Georgia law"); Clark v. Georgia, Civ. Act. No. 1:21-CV-3396, 2021 WL 8084671, at *3 (N.D. Ga. Nov. 8, 2021) (explaining state prison not an entity capable of being sued), *adopted by* 2022 WL 898362 (N.D. Ga. Mar. 28, 2022); Smith v. Chatham Cnty. Sheriff's Dep't, No. CV 412-224, 2012 WL 5463898, at *2 (S.D. Ga. Oct. 22, 2012) ("[T]he [county jail] is not a legal entity capable of being sued."), *adopted by* 2012 WL 5463762 (S.D. Ga. Nov. 8, 2012); Sebastian v. Maynard, No. 5:10-CV-221, 2010 WL 3395040, at *2 (M.D. Ga. July 12, 2010) ("The Lamar County Detention Center is not a legal entity that is subject to suit under 42 U.S.C. § 1983."), *adopted by* 2010 WL 3395154 (M.D. Ga. Aug. 21, 2010). Appropriate parties for suit under § 1983 include "persons" who participated in the alleged violation. See 42 U.S.C.

18

§ 1983; see also Georgia Insurers Insolvency Pool v. Elbert Cnty., 368 S.E.2d 500, 502 (Ga. 1988) (limiting § 1983 liability to "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue") (quotations omitted). Thus, all claims against Montgomery State Prison should be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion for judgment on the pleadings be **GRANTED** as to Defendants Page, Chester, and Calhoun and any claims against them.  (Doc. no. 3.)  The Court also **REPORTS** and **RECOMMENDS** Defendant Montgomery State Prison, and all claims against it, be **DISMISSED**.  See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1277-78 (11th Cir. 2001) (*per curiam*); 28 U.S.C. § 1915A.  Should the presiding District Judge adopt this recommendation, the Court also **REPORTS** and **RECOMMENDS** this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 15th day of May, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

19